**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Peter VOLE, Jr., Defendant-Appellant.**

**No. 17319.**

United States Court of Appeals, Seventh Circuit.

Dec. 29, 1970.

James M. Shellow, William M. Coffey, Shellow, Shellow & Coffey, Milwaukee, Wis., for defendant-appellant.

Edward Fenig, U. S. Dept. of Justice, Crim. Div., Washington, D. C., William J. Bauer, U. S. Atty., Thomas A. Foran, U. S. Atty., Chicago, Ill., Will Wilson, Asst. Atty. Gen., Washington, D. C., for plaintiff-appellee.

Before KILEY, FAIRCHILD and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Appellant, Peter Vole, Jr., was indicted with seven others [1] under 18 U.S.C. § 371 for conspiring to pass, publish and sell with intent to defraud, counterfeit money in violation of 18 U.S.C. § 472 and conspiring to buy, receive and possess counterfeit money in violation of 18 U.S.C. § 473. In addition, Vole was indicted on two substantive counts for violations of 18 U.S.C. §§ 472 and 473. Vole was tried before a jury with two co-conspirators, John B. Conte and James Ciconte,[2] found guilty on all three counts and sentenced concurrently to five years on the conspiracy count and ten years on each substantive count. We reverse and remand for a new trial.

At trial the government's case against Vole was based upon the testimony of three co-conspirators, Rodney Gummow, Charles Masini and Charles Drake (a/k/a Charles Scotti). Rodney Gummow testified that on or about August 6, 1964, he flew to Cleveland and purchased from Conte fifty thousand dollars in counterfeit twenty-dollar bills with money given to him by Vole and that on the following day, he delivered the counterfeit bills to Vole in Chicago. Gummow further testified that on or about August 13, 1964, he the appellant and an unindicted co-conspirator, Ruth Dell, drove to Cleveland and that Vole provided the money for the purchase of approximately one hundred thousand dollars in counterfeit one-hundred dollar bills. Finally, Gummow testified that on August 24, 1964, he flew to Cleveland and purchased from Conte fifty thousand dollars in counterfeit twenty-dollar bills and that he returned to Chicago with these bills and gave them to Vole.

Charles Masini, who was Vole's first cousin, testified that in the middle of August, 1964, he found an attache case containing ten thousand dollars in counterfeit twenty-dollar bills in a room in Vole's house which was being occupied by co-conspirators Henry Hagg and Charles Lamb. Masini stated that he took the money and left on a trip and that when he returned, Vole accused him of stealing his money. Masini further

1. Also indicted were, John B. Conte, Rodney Gummow, Marie Waigand, Charles Drake (a/k/a Charles Scotti), James Ciconte, Louis Bartemio and Henry Hagg.

2. Marie Waigand was dismissed from the indictment. The government asserted that Hagg was in Mexico and could not be extradited, and Charles Drake (a/k/a Charles Scotti), and Rodney Gummow and Louis Bartemio pleaded guilty.

testified that Vole said to him that "he wasn't worried about the money because he had a lot more of it."

Finally, Masini testified that when he, himself, procured some counterfeit currency from John Conte in August of 1965, Vole asked him for some and he gave Vole ten to twenty counterfeit twenty-dollar bills. Masini further stated that when he asked Vole where all his counterfeit money was, Vole stated that he had given it all to Charles Lamb and Henry Hagg and that they were sending money back to him in the form of money orders as they cashed the notes.[3]

On cross-examination, Masini admitted that on September 9, 1965, he planted thirty or forty counterfeit twenty-dollar bills in an automobile belonging to Vole and then advised the Lake County Sheriff that Vole possessed these bills. Vole was arrested but unexplainedly released after five hours and was not charged with possession of the planted bills. On redirect examination, Masini testified that a Lake County Deputy Sheriff Balzrina told him that the charges against him would be dropped if he "set up" appellant. Balzrina testified that he did not tell Masini to frame appellant and that he only learned several months after the frame that the bills were planted.

Charles Drake (a/k/a Charles Scotti) testified that he met Peter Vole in a tavern in September, 1964, and that Vole asked him if he were interested in some counterfeit notes. Scotti further testified that appellant showed him two counterfeit one-hundred dollar bills and said he could get Scotti all that he wanted. Scotti related that they made plans to meet the following week at another tavern but Vole never appeared.

Vole's theory of defense throughout trial and in closing argument was that

he was framed. Vole contended that the testimony of Gummow, Masini and Scotti was consciously designed to prove him to be the main financial source for the conspiracy to cover up the person or persons who were the true financial source and to provide a bargaining lever for Masini, Gummow and Scotti in making a deal with the government on their own charges.

Consequently, Vole proposed as an instruction reflecting his theory of the case, the following:

> You are instructed that it is the defendant Vole's theory of this case that Charles Masini conspired with other persons to frame him for a counterfeiting conspiracy. If the facts adduced in support of the defendant Vole's theory, create in your mind a reasonable doubt of his guilt of these charges, then you must find the defendant Vole not guilty of these charges.

■ The government did not object to the instruction, yet it was refused. No instruction was given by the court which conveyed appellant's theory of defense and we find the failure to give the instruction or any comparable instruction to be reversible error by the court.

This court in United States v. Grimes, 413 F.2d 1376, 1378 (7th Cir. 1969), reiterated the established proposition that "the defendant in a criminal case is entitled to have the jury consider any theory of defense which is supported by law and which has some foundation in the evidence, however tenuous." See also United States v. Phillips, 217 F.2d 435 (7th Cir. 1954), in which this court, quoting from a D.C. Circuit opinion, stated:

> * * * in criminal cases defendant is entitled to have presented instructions relating to a theory of defense for

---

3. The evidence at trial showed that Charles Lamb was arrested in San Francisco for the possession of one counterfeit one-hundred dollar bill and one counterfeit twenty. The evidence also showed that appellant Vole received eight

money orders from Henry Hagg from California purchased with counterfeit notes. Vole testified that the money orders were for the payment of a car and he had no idea that they were purchased with counterfeit currency.

which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent or of doubtful credibility.

Tatum v. United States, 88 U.S.App. D.C. 386, 190 F.2d 612, 617 (1951).

The facts elicited at trial establish that there was sufficient evidence to merit an instruction encompassing Vole's theory of defense that he was framed. Charles Masini, whose testimony was a substantial part of the evidence against Peter Vole, admitted on cross-examination that in September of 1965 he planted counterfeit money in Vole's auto in an attempt to frame him. Although Vole was arrested and released without being charged, Masini's attempt is certainly supportive of Vole's theory at trial that the testimony of Masini was another attempt to frame him.

In addition, evidence at trial showed that previous to the instant indictment, Vole was indicted for the possession of five counterfeit bills, indictment No. 65 CR 583, which were allegedly found under the rug in his house on August 10, 1965. The government without explanation failed to prosecute appellant on this indictment nor was Vole's alleged possession of the bogus bills, charged in 65 CR 583, which occurred during the period of the conspiracy charged in Count I of the present indictment, charged in the present indictment. This is especially significant since there was no evidence introduced at trial in the present case which placed any counterfeit money in the possession of Vole. It would seem that if the bills found under Vole's rug were in fact placed there by him, the government would have charged him with this possession in the instant indictment. These facts indicate a possibility that these bills alleged to have been found under a rug in appellant's house were in fact planted in another attempt to frame Vole and that the government determined that the evidence against Vole under this indictment, 65 CR 583, did not warrant prosecution.

In addition, in support of Vole's theory that false testimony against him was used by Masini and Gummow as a bargaining lever on their own charges, the evidence showed that Gummow, a prime actor in the conspiracy, pled guilty and was sentenced to five years, only fourteen months of which were in confinement, and Masini, although designated as a co-conspirator in the indictment, was not indicted. In contrast, Vole was sentenced concurrently to five years on the conspiracy count and ten years on each of the two substantive counts.

The above facts, while not establishing that Vole was, in fact, framed by other conspirators, satisfy the minimal requirements needed for admitting an instruction encompassing a theory of defense.

We note that in two recent cases in this Circuit, we have held that refusal to give a theory of defense instruction was harmless error. United States v. Napue, 401 F.2d 107, 112 (7th Cir. 1968), cert. denied, 393 U.S. 1024, 89 S.Ct. 634, 21 L.Ed.2d 568 (1969); United States v. Hamilton, 420 F.2d 1096, 1098–1099 (7th Cir. 1970). In both cases, we found on the facts that there was no doubt that the jury was not misled by the court's failure to instruct on defendant's theory of defense. In addition, in *Hamilton* the defendant failed to request an instruction. In the instant case, however, looking at the record as a whole and considering how the jury may have assessed the credibility of Masini, Gummow and Scotti in light of their previous felony convictions, we conclude that a reasonable doubt exists that the jury would have returned a finding of guilty had an instruction encompassing Vole's theory of defense been given. There are a sufficient number of threads in Vole's case to make it conceivable that a jury charged to consider them together as a possible explanation for the events, might believe that there was a doubt as to whether Vole was or was not framed. Vole's theory was not simply a blanket denial of the charge and an insistance of his own innocence; see Charron v. United States, 412 F.2d 657, 661 (9th Cir. 1969); Baker v. Unit-

ed States, 310 F.2d 924, 930 (9th Cir. 1962); rather, it was a plausible theory that there existed a conspiracy involving the other defendants and that he was brought in to cover up the main financial source for the conspiracy and to be used to bargain on their own charges with the government. An instruction was particularly important to Vole since his view of some of the facts concurred with the evidence presented by the government.

■ In addition, the government argues that the district court's instruction which stated:

Testimony has been adduced in this case which if believed by you shows that the government induced witnesses to testify falsely. If you believe that the government, or any of its agents, induced any witness to testify falsely in this case, this is affirmative evidence of the weakness of the government's case.

encompassed Vole's theory of defense. We find it clearly did not. Vole's theory of defense was not that the government induced witnesses to testify falsely, but that he was framed by the other conspirators. A theory of defense instruction is required in order to be sure that a defendant's defense is brought to the attention of the jury. Our reading of the district court's charge does not convince us that it did so.

Since we are reversing and remanding for a new trial, we need not reach the merits of Vole's other allegations of error. However, in the interest of an error-free re-trial, we note the following:

■ (A) We find appellant's request to inspect the Grand Jury minutes, which led to the first indictment against Vole, 65 CR 583, should have been granted. The subject of 65 CR 583 was the finding of five counterfeit bills under appellant's rug on August 10, 1965. Yet without explanation, appellant was never prosecuted under the indictment and at the trial on the instant indictment, a government agent testified that no bills were found in appellant's house when it was searched on August 10,

1965. These inconsistencies may indicate that the circumstances surrounding indictment 65 CR 583 would show a possible frame of appellant. The opportunity to inspect the Grand Jury minutes of 65 CR 583 was important to appellant's theory of defense at trial and absent a compelling interest shown by the government, should be allowed. See Dennis v. United States, 384 U.S. 855, 868–875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

■ (B) We suggest that the articles taken from Vole's home on the date of the search, August 10, 1965, in which the alleged counterfeit bills were discovered under appellant's rug, be inventoried or that the government produce a satisfactory explanation for its failure to produce an inventory. Since Vole contends that some of the items taken pursuant to this search would support his theory of the case, it is important for the court to ascertain the whereabouts of these items.

■ (C) At the beginning of the trial, Vole moved on behalf of all defendants for an order to the United States Marshal permitting them access to co-defendants and witnesses in the custody of the government. Vole contended his defense counsel was prevented by the Marshal from interviewing such witnesses. The district court denied the motion, It is unclear what opportunities defense counsel had to interrogate the government's witnesses. The government asserts they had ample opportunity. In any event, since we are remanding the case, we wish to make it clear that witnesses are the special property of neither party and in the absence of compelling reasons, the district court should facilitate access to them before trial whenever it is requested. See e. g., Gregory v. United States, 125 U.S.App. D.C. 140, 369 F.2d 185, 188 (1966); Callahan v. United States, 371 F.2d 658, 660 (9th Cir. 1970).

For the foregoing reasons, the decision of the district court is reversed and the case is remanded for a new trial.

Reversed and remanded.