**UNITED STATES of America, Appellee,**

v.

**Oswaldo ALFONSO–PEREZ, Appellant.**

**No. 864, Docket 75–1395.**

United States Court of Appeals, Second Circuit.

Argued April 12, 1976.

Decided May 17, 1976.

Joseph Beeler, Miami, Fla. (Albert J. Krieger, New York City, on the brief), for appellant.

Bernard J. Fried, Asst. U. S. Atty., David G. Trager, U. S. Atty., E. D. N. Y., Paul B. Bergman, Asst. U. S. Atty., Brooklyn, N. Y., on the brief, for appellee.

Before LUMBARD, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Oswaldo Alfonso-Perez (Alfonso) was convicted after a jury trial in the United States District Court for the Eastern District of New York, James L. Watson, J.,[1] of conspiracy to import heroin and cocaine into the United States for purposes of distribution, 21 U.S.C. §§ 173, 174, and sentenced to 15 years' imprisonment and a $15,000 fine. He is presently incarcerated, serving concurrently this and a three-year term for obstruction of justice, to which he pleaded guilty on a separate indictment. On appeal, Alfonso seeks reversal on a number of grounds. As set forth below, we find that a combination of several rulings of the trial judge requires reversal of the conviction.

## I

The Government's case at trial consisted of the testimony of four alleged co-conspirators of Alfonso, who testified to a number of narcotics transactions with him from December 1969 through August 1970. From this testimony, the jury could have concluded that Alfonso was a major dealer in heroin and cocaine. The government witnesses testified to numerous narcotics transactions involving Alfonso, including purchases and attempted purchases of imported cocaine in amounts ranging from 10 to 50 kilograms, and sales of heroin and cocaine in smaller amounts. In addition, there was testimony that one Domingo Abreu, who the jury could have found was a co-conspirator of Alfonso,[2] successfully travelled to Spain to renew on Alfonso's behalf a heroin connection. Tens of thousands of dollars changed hands in these transactions, which took place in Miami and New York, and involved arrangements in several South American and European countries.

Alfonso, who does not challenge the sufficiency of the evidence, defended the case at trial by attacking the credibility of the Government's witnesses. Each had an unsavory past, and some motivation to cooperate with the Government.[3] The credibility

---

1. Of the United States Customs Court, sitting by designation.

2. Abreu was indicted along with Alfonso, but was a fugitive at the time of the trial and apparently remains so.

3. Wilfredo de Jesus Risco Dominguez (Risco) had been convicted of robbery in Puerto Rico, murder in Ecuador, and a federal narcotics offense in New York, and began cooperating with federal investigators while awaiting sentence, and while subject to extradition to Puerto Rico to answer a murder indictment and a charge of jumping bail after his conviction, to Colombia to face drug charges from which he escaped by bribery, and to Ecuador, where he had also bribed his way out of prison after being con-victed of murdering a policeman. Claudina Leiros was serving 20-year sentences on federal narcotics convictions in New York and Miami, and began cooperating after her appeals had proved unavailing; at the time of this trial she was eligible for parole. Rene Rosquete's 17-year sentence for federal narcotics offenses was apparently vacated after he became an informant; he was put on probation, with re-sentencing deferred and continued cooperation with the Government a special condition of his probation. Luis Ureta-Morales testified that he had been told that if he cooperated with the Government, "they would try to help me get a reduction" of his 15-year sentence for conspir-

of the co-conspirator witnesses was thus the main issue at trial, and was squarely posed for the jury, which apparently believed at least one of them.

## II

■ The clearest error of the trial judge was his failure to charge the jury concerning the statute of limitations. Both sides agree that the original indictment in this case was returned on December 12, 1974, and charged a conspiracy lasting from November 1, 1969 to August 31, 1970. Because of the five-year statute of limitations, 18 U.S.C. § 3282, however, Alfonso could not lawfully have been convicted for an offense which occurred before December 12, 1969.

As noted above, the Government offered evidence of a substantial number of narcotics transactions. As to all but one of these there is no dispute that, if they occurred at all, they occurred within the limitations period. There is some question, however, about one of the transactions, Rene Rosquete testified that he had purchased one kilogram of heroin from Alfonso in "the first days" of December 1969. Claudina Leiros, who had arranged this transaction, also testified that it occurred "[a]pproximately at the beginning of December 1969."

Alfonso submitted a written request, which was denied, that the judge charge as follows:

If you believe the witness Rene Rosquete that there was a one kilo heroin transaction but that it occurred prior to December 12 of 1969 and you have a reasonable doubt as to the occurrence of the other alleged transactions or that there was a conspiracy to commit those specific transactions then I instruct you that you must acquit the defendant of the charge in this case.

acy to import narcotics, and would recommend parole, despite a conviction for attempted escape.

**4.** Government counsel correctly urged the judge to have all discussion on the record, but the judge did not do so in this instance.

The request was renewed after the judge completed his charge to the jury. The Government stated at oral argument before us that it had opposed this charge in colloquy not appearing on the record on the ground that the proposed charge was "confusing as it was prepared."[4] We note that insofar as there might have been any objection to the language of the proposed charge as drafted by defense counsel, it was indicated on the record below that he was proposing the charge for its substance. Moreover, we have recognized that a statute of limitations charge must be given even though "this may further complicate the already complex charge in a narcotics conspiracy trial." *United States v. Borelli,* 336 F.2d 376, 385 (2d Cir. 1964), cert. denied sub nom. *Cinquegrano v. United States,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965).

Appellant argues that the December 1969 heroin sale might have been the only transaction the jury believed was proven beyond a reasonable doubt. Of course, if the jury did conclude that this was the only, or the latest, overt act in furtherance of the conspiracy to have been so proven, and further concluded that it occurred before December 12, 1969, it would have been obliged to acquit, but it was not instructed to this effect.

The possibility that the jury was convinced of this transaction, but dubious of the others, is a slim one.[5] The credibility of all the government witnesses was vigorously attacked by the defense, and on similar grounds. Nevertheless, as Alfonso points out on this appeal, Rene Rosquete was able to link appellant directly to only one narcotics transaction—the sale of a single kilo of heroin in December 1969. While Rosquete further testified that he routed 10 kilos of cocaine to Claudina Leiros in March 1970, he offered no corroboration of Leiros's statement that this cocaine had then been

**5.** On the other hand, the jury could easily have concluded that the transaction occurred before the crucial date of December 12, 1969.

delivered to Alfonso for distribution in New York City. Though it appears highly unlikely, it is possible that the jury, which saw the witnesses and was the sole judge of their credibility, believed Rosquete, but disbelieved the other government witnesses. If it did, Alfonso should have been acquitted, but the trial judge's charge permitted him to be convicted. This is "fatal error." *Grunewald v. United States,* 353 U.S. 391, 414, 77 S.Ct. 963, 978–79, 1 L.Ed.2d 931, 948–49 (1957). See also *United States v. Borelli,* supra, 336 F.2d at 384–86.

If this error stood alone, the unlikelihood that the jury found the facts in such a way as to create a statute of limitations defense for Alfonso might make us reluctant to reverse on this ground. In combination with the other rulings noted below, however, it requires reversal.

### III

■ Another jury instruction requested by Alfonso and rejected by the trial court was a "theory of the defense" charge. Specifically, Alfonso requested the court to charge:

> You are instructed that the defendant's position is that he was [not] involved in the narcotics conspiracy. It is his position that the government witnesses must have falsely testified against him for reasons of their own, such as to obtain their own freedom from imprisonment by providing a target for prosecution other than themselves.

We have held that a defendant is "entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . ." *United States v. Platt,* 435 F.2d 789, 792 (2d Cir. 1970), quoting *United States v. O'Connor,* 237 F.2d 466, 474 n. 8 (2d Cir. 1956). This language is broad enough to include the theory that the Government's witnesses are lying. *United States v. Vole,* 435 F.2d 774 (7th Cir. 1970). While the Government accepts this formulation, it argues that there was in this case no "foundation in the evi-

dence" for the theory presented by defendant.

■ The Government attempts to distinguish *Vole,* on which Alfonso relied both here and in the trial court, by pointing out that in that case there was affirmative testimony supporting the theory that the defendant was framed. But it is not required that the evidentiary basis for a defendant's theory be affirmative testimony introduced by him. Evidence brought out on cross-examination, and inferences drawn from testimony elicited by the prosecution itself, also can—and frequently will—provide the basis for defendant's arguments to the jury. Here, Alfonso's cross-examination of the government witnesses plainly provided a sufficient basis for his theory, by demonstrating that each witness was in a position to be benefited by cooperation with the Government.

Of course, we do not suggest that these witnesses were in fact lying. That was for the jury to determine, and indeed the jury here evidently concluded that at least one of the government witnesses was credible. We only point out that there was a sufficient basis in the record to permit defendant to argue his theory to the jury—in fact, defendant was permitted to make such an argument without objection. Where this is so, there is no reasonable ground for a judge to refuse to charge the jury, without suggesting that he agrees with it, that this is defendant's theory of the case. This error, too, would be unlikely in itself to have prejudiced defendant, since the defense summation squarely propounded Alfonso's theory to the jury. But as appellant points out, it is of some value to a defendant to have the trial judge clearly indicate to the jury what his theory of the case is, and that that theory, if believed, justifies acquittal. Moreover, the refusal to charge on this theory exacerbated the judge's refusal to charge on defendant's statute of limitations theory. Thus, it is not this error alone, which by itself might be harmless, but a combination of erroneous or dubious rulings that requires reversal in this case.

## IV

The last substantial point raised by Alfonso is that the prosecutor improperly commented during summation on his failure to testify in his own behalf. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Two instances are specified. First, in defending the credibility of the witness Leiros against the charge that she had a motive to lie to please the Government, the prosecutor argued that such a motive was counter-balanced by a fear of getting into further trouble if she gave false testimony. Such fear would be reasonable, because the witness would know that defendant might disprove her testimony:

> Let's go a little further. Let's assume that the man in the room [Alfonso] proves otherwise. When Claudina Leiros takes the stand she knows that a defendant in this country has the right to present evidence.

This statement was promptly objected to. Secondly, in discussing the defense cross-examination of government witnesses, the prosecutor emphasized that defense counsel had questioned them about their criminal past, but not about the substance of their testimony implicating appellant. This statement was also objected to. Neither comment was followed by cautionary instructions.

In defending the prosecutor's remarks, the Government relies on *United States ex rel. Leak v. Follette*, 418 F.2d 1266 (2d Cir. 1969), *cert. denied*, 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970). There, we indicated that when a prosecutor is "provoked by an attack on the credibility of a government witness, [he] 'may reply to the argument of opposing counsel, and in doing so may make statements which might otherwise be improper'." Id. at 1269, quoting *Baker v. United States*, 115 F.2d 533, 544 (8th Cir. 1940), *cert. denied*, 312 U.S. 692, 61 S.Ct. 711, 85 L.Ed. 1128 (1941). Here, of course, the credibility of the Government's witnesses was the major issue in the trial, and was strongly attacked by defense counsel in his summation. Accordingly, the Government argues that any impropriety in the summation here was excused. Secondly, we said in *Leak* that

> where the prosecutor confines himself to arguing the strength of his case by stressing the credibility and lack of contradiction of his witnesses, we will not be astute to find in this a veiled comment on the defendant's failure to testify even if in practical fact, although not in theory, no one else could controvert them.

Id. at 1270. The Government, relying on this language, contends that the prosecutor's comments were not improper, since they related only to the lack of contradiction of the government witnesses, and did not specifically focus on the defendant's failure to take the stand.

These arguments have considerable force, and if this were appellant's only claim, we doubt that we would reverse his conviction on the basis of these comments. There was an attack on the prosecution witnesses' credibility, and the prosecutor in rehabilitating them did not directly refer to the defendant's failure to testify. Nevertheless, at least the first of the challenged comments is close to the border of the impermissible.

The prosecutor's comment on the credibility of Leiros focussed attention on "the man in the room" and indicated that he could have "prove[d] otherwise," but did not, when Leiros identified him as someone with whom she had had narcotics transactions. This is more than merely stressing that the Government's evidence is uncontradicted; it specifically calls attention to the defendant's right to present evidence contradicting the Government's case, focusses that attention on the very person of the defendant, and implicitly calls for an inference from his failure to exercise that right. This is a far cry from the comments approved in *Leak*, which went no further than the repeated assertion that the government witness' testimony was uncontradicted and not shaken on cross-examination. 418 F.2d at 1267 n.1.

We doubt that this comment by itself would have substantially prejudiced defend-

ant's case, and in itself it may have amounted to harmless error, if error at all. But we stress again the combination of errors in this trial. It is harder to consider these comments insignificant when they are taken together, as they must be, with the other problems we have discussed.

V

Alfonso's other arguments on this appeal are less troubling. First, he argues that it was error for the trial court to deny a pretrial motion for a list of those unindicted co-conspirators who were known to the grand jury, in order to enable him to prepare his defense. The record does not reflect that such a motion was ever made. Alfonso also challenges the trial judge's refusal to grant a further continuance or to strike the testimony of co-conspirator Rosquete because the unavailability of certain court records in the Southern District of Florida made full cross-examination impossible. The trial judge ruled that effective cross-examination was possible, and the record shows that he was correct. Rosquete's background and involvement with the Government were made perfectly clear to the jury, and any further information would merely have been cumulative. A further objection to Rosquete's testimony concerns certain of the many items of section 3500 material turned over to the defense, but there was no showing of government wrongdoing or prejudice to defendant. See *United States v. Miranda*, 526 F.2d 1319, 13324 (2d Cir. 1975).

Finally, Alfonso alleges prosecutorial misconduct in that the prosecutor did not properly inform him of a corrections officer's report that the government witness Wilfredo Risco had been involved in a fight with another prisoner while waiting to testify. Risco was fully revealed, by the prosecutor's direct examination as well as by cross-examination, as perhaps the least reputable of the Government's witnesses, and his exposure to trial or punishment in a variety of jurisdictions for several crimes including murder, see note 3 supra, was made known to the jury. The idea that the

jury would be impressed with the argument that he committed perjury because he feared punishment for fighting with a fellow prisoner is simply unbelievable.

For the reasons set forth above, the judgment of conviction is reversed, and the case remanded for a new trial.