UNITED STATES of America, Appellee,

v.

Benjamin DURHAM and Warren Cook, Defendants-Appellants.

Nos. 983, 1104, Dockets 86–1394, 86–1395.

United States Court of Appeals, Second Circuit.

Argued May 7, 1987.

Decided Aug. 5, 1987.

---

---

Barry Bassis, Legal Aid Soc., Federal Defender Services Unit, New York City, for defendant-appellant Benjamin Durham.

Gerald M. Weiss, New York City, of counsel, for defendant-appellant Warren Cook.

Dave S. Hattem, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., and Emily Berger, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before OAKES, NEWMAN and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Appellants, Benjamin Durham and Warren Cook, appeal from judgments of conviction entered in the United States District Court for the Eastern District of New York, Henry Bramwell, *Judge*, convicting them, after a jury trial, of conspiracy to maliciously damage by means of fire a building used in an activity affecting interstate commerce, in violation of 18 U.S.C. § 371. Because the district court failed to charge the jury on the defense theory, we reverse and remand for a new trial.

## I.

This case involves an agreement reached between appellants and undercover agents to burn down a building in Staten Island, New York. We briefly summarize the evidence pertinent to this appeal.

On January 13, 1986, a confidential informant introduced Agent Kenneth Pribil of the Bureau of Alcohol, Tobacco and Firearms ("BATF") to appellant, Benjamin Durham. Durham, who was under the impression that Agent Pribil was a corrupt attorney for organized crime, pointed to a building on fire across the street and said "[i]f you need anything like that done, I'm your man." Durham added that he and a friend had committed arson in the past and were knowledgeable about various methods used to create fires for insurance purposes, including electrical fires. Pribil responded that he was not sure if he was interested in Durham's offer but would keep it in mind. At the conclusion of the meeting, Pribil and Durham exchanged telephone numbers.

Following a series of telephone conversations between Agent Pribil and Durham, the two met on February 12, 1986 at the Galaxy Diner in Brooklyn. At the meeting, Pribil introduced a BATF agent, Allan MacDonald, who was posing as the owner of a building he wanted burned. MacDonald described his building as one with a wood frame, containing a bar, three rental establishments, and a second story apartment. Responding to MacDonald's questions about his proposed techniques for setting the fire, Durham said that he intended to use seven gallons of paint thinner, poured on the walls and ceiling, as an accelerant. Durham stated that paint thinner was less detectable and less volatile than kerosene. The parties then agreed that if Durham committed the arson, he would be paid $7,000–$2,000 in advance and $5,000 upon completion of the job. Durham stated that he would commit himself to do the job only after he had consulted his partner, whom he identified as "Jessie," and had inspected the premises.

On February 18, Durham informed Agent Pribil by telephone that he had a new partner, whom he identified as appellant Warren Cook, and assured Pribil that Cook had experience in setting fires. Durham also advised Pribil that he was having trouble locating paint thinner.

The next day, February 19, Durham and Cook met with Agent Pribil at the Galaxy Diner in Brooklyn. After some discussion about the job and the price, the three traveled to the proposed arson site, the Main Bar and Grill, on Staten Island. Durham and Cook first inspected the outside of the building and indicated that they would be able to burn it. They then entered the bar and met with Agent MacDonald, who continued to pose as the bar owner. MacDonald took appellants on a tour of the bar, including the top of the building, as well as the boiler room. After this tour, Durham again stated that they would be able to burn the building and discussed the method they intended to use. Specifically, Durham stated that they would apply ten gallons of paint thinner starting at the roof and working down the walls, and would then apply the accelerant from the rear to the front of the bar. Cook explained that paint thinner was preferred as an accelerant over kerosene because the latter was more detectable. For an additional $2,000, appellants agreed to burn the bar while a tenant, whom MacDonald said he wanted killed, was in the upstairs apartment. After some further discussion finalizing the agreement and setting the date for the fire for the next day, MacDonald gave Durham $500 and Cook the key to the bar. As appellants were about to leave, the agents placed them under arrest.

Appellants were charged in a two-count indictment with conspiracy to maliciously damage by means of fire a building used in an activity affecting interstate commerce, in violation of 18 U.S.C. § 371, and with the substantive count of attempt to commit this crime, in violation of 18 U.S.C. §§ 844(i) and 2. After a jury trial, appellants were acquitted of the substantive attempt count, but convicted of the conspiracy count. This appeal followed.

## II.

Appellants contend that the district court erred by not incorporating the defense theory in its charge to the jury. At trial, appellant Cook testified in his own defense that it was his and Durham's intention to pretend to be arsonists and to "dupe" the agents out of the $2,000 advance money by agreeing to burn down a building. However, according to Cook, both men agreed that they would not set fire to the building. Cook further explained that the reason they never actually bought paint thinner was because they never intended to commit arson.

At a charge conference and by later written submission, defense counsel requested that the district judge's charge to the jury reflect the defense theory. Specifically, counsel asked that the court instruct the jury as follows:

> You have heard evidence that the defendants intended to dupe the agents and never, in fact, intended to burn the Main Bar and Grill. If you so find, then you must acquit them, both of the attempt to commit arson and of conspiracy to commit arson.

Appellant's request was denied. The district court did instruct the jury in general terms that the crime of conspiracy required specific intent to commit a crime, which the court defined as "knowingly [doing] an act which the law forbids, purposely intending to violate the law." However, the court never explicitly spelled out to the jury that in this instance it had to find specific intent to commit arson as opposed to an intent to "dupe" the agents of $2,000. Defense counsel objected at the time the charge was initially given to the jury. Further, in response to a note from the jury for a re-reading of the definition of conspiracy, the court did recharge the jury but did not include any instructions as to the element of specific intent despite defense counsel's specific request.

We have repeatedly recognized a criminal defendant's right to a charge which reflects the defense theory. In *United States v. Pedroza*, 750 F.2d 187, 205 (2d Cir.1984) (quoting *United States v. O'Connor*, 237 F.2d 466, 474 n. 8 (2d Cir.1956) and citing cases), we stated that "[i]t is well established that '[a] criminal defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evi-

dence, no matter how weak or incredible, that evidence may be.' " We note that this rule is accepted in other circuits as well. *See, e.g., United States v. Plummer,* 789 F.2d 435, 438 (6th Cir.1986); *United States v. Wellington,* 754 F.2d 1457, 1463 (9th Cir.1985), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 592, 593, 88 L.Ed.2d 573 (1986); *United States v. Hyman,* 741 F.2d 906, 912 (7th Cir.1984).

 Applying this rule to the instant case, we must reverse. To sustain a conspiracy conviction the government must prove beyond a reasonable doubt that the defendant had the specific intent to violate one or more substantive statutes. *United States v. Gaviria,* 740 F.2d 174, 183 (2d Cir.1984). Thus, the government had to prove that in this case appellants specifically intended to burn the Main Bar and Grill. Appellants' defense was directed specifically at negating the element of specific intent. Cook testified that he and Durham intended only to "rip off" the agents and to commit a "scam" and that they never intended to actually set fire to the building. Appellants requested a charge which informed the jury of their defense theory. Although appellants were not necessarily entitled to have the exact language of the charge they submitted to the district court read to the jury, *United States v. Dyman,* 739 F.2d 762, 771 (2d Cir.1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 969, 83 L.Ed.2d 973 (1985), since their defense theory did have a basis in law and in the evidence, they were entitled to have instructions presented which adequately apprised the jury of the elements of the crime charged and their defense. *Pedroza,* 750 F.2d at 204–05. In our view, the court's general instructions on specific intent were not "adequate to inform the jury that if it believed the defendants' theory it was entitled to conclude that they did not have the requisite intent to be convicted of the offenses charged." *Id.* at 205. The court's initial instructions linked the element of specific intent only to intent to violate the law in general, but not to intent to burn the subject building; the court's recharge on the definition of conspiracy did not mention the element of specific intent at all. As we

have previously noted, "it is of some value to a defendant to have the trial judge clearly indicate to the jury what his theory of the case is, and that that theory, if believed, justifies acquittal." *United States v. Alfonso-Perez,* 535 F.2d 1362, 1365 (2d Cir.1976).

 The government argues that the district court did not err in failing to specifically state the defense theory. Citing *United States v. Badalamente,* 507 F.2d 12, 22 (2d Cir.1974), *cert. denied,* 421 U.S. 911, 95 S.Ct. 1565, 43 L.Ed.2d 776 (1975), the government contends that based on the court's charge taken as a whole, which included a reading of the indictment and which made reference to the fact that the defendants could be convicted only of the conspiracy as charged in the indictment, and based on the summations of both the prosecutor and the defense attorneys, which focused on and emphasized the defense theory, there could have been no confusion in the minds of the jurors about what the defendants had to intend to do to commit the crime charged. We disagree. First, the charge in *Badalamente* was more explicit in communicating to the jury the theories of the various defendants than the charge in this case. In that case, defendant Badalamente had argued to the jury the defense of non-involvement to a conspiracy charge. Although the district court did not remind the jury that Badalamente maintained that he did not participate in the conspiracy, it did specifically tell the jury that only Badalamente's two codefendants asserted the defense of entrapment and withdrawal, and in discussing the defense, the district court referred to the codefendants by name and not to Badalamente. *Id.* Here, the district court did not touch upon or make reference to the defendants' theory in any way. Second, as a general proposition, counsel's summations are not adequate to inform a jury of what it should consider a legally valid defense. This is especially true in this case where the court repeatedly emphasized in its preliminary instructions to the jury before trial and again in its final charge that "the *court* will be the judge of the law"

(emphasis added) and that it is the jury's duty to follow all of the court's instructions. Viewing the charge in its entirety, we believe that the jury might easily have been confused as to what constituted a valid legal defense to the counts charged. We note, for instance, that the court included in its charge specific instructions relating to the defense of entrapment. Thus, by charging entrapment as a valid defense to be considered by the jury but failing to tell the jury that the defense theory relating to specific intent was also a valid legal defense, the trial judge could have caused the jury to conclude that the defense theory was not valid under the law, and, accordingly, should not be considered.

## III.

For the reasons stated, the judgments of conviction are reversed, and the case is remanded for a new trial.